# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DANIEL L. WHELCHEL,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CIV 12-376-FHS-KEW |
| | ) |
| **CARL BEAR, Warden,** | ) |
| | ) |
| Respondent. | ) |

## REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge on petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate currently incarcerated at Joseph Harp Correctional Center in Lexington, Oklahoma, attacks his convictions and sentences in Pontotoc County District Court Case No. CF-2009-193 for Assault with Intent to Kill (Count 1) and First Degree Robbery (Count 2). He sets forth the following grounds for relief:

    I.     Ineffective assistance of counsel.

    II.    Insufficiency of the evidence to support conviction for First Degree Robbery.

    III.   First Degree Robbery conviction was in violation of Okla. Stat. tit. 21, § 11 which mandates that a specific statute takes precedence over a more general statute.

    IV.   Convictions violated Okla. Stat. tit. 21, § 11 provision against double punishment.

    V.    Under the circumstances of the case, the sentences were excessive and violated the Eighth and Fourteen Amendments and the corollary provisions of the Oklahoma Constitution.

    VI.   The cumulative effect of all the errors addressed above deprived

petitioner of a fair trial.

The respondent concedes that petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review. The following records have been submitted to the court for consideration in this matter:

    A.    Petitioner's direct appeal brief.

    B.    The State's brief in petitioner's direct appeal.

    C.    Summary Opinion affirming petitioner's judgment and sentence. *Whelchel v. State*, No. F-2010-976 (Okla. Crim. App. Oct. 4, 2011).

    D.    Petitioner's Notice of Plea of Not Guilty By Reason of Insanity, filed in the trial court on September 23, 2009.

    E.    Petitioner's Motion for Continuance to allow petitioner to meet with an expert appointed by the Oklahoma Indigent Defense System, filed in the trial court on February 25, 2010.

    F.    Petitioner's evaluation by Mental Health Services of Southern Oklahoma, filed in the trial court on June 22, 2009.

    G.    Transcripts of the proceedings in Case No. F-2010-976.

    H.    Petitioner's Application for an Evidentiary Hearing on the issue of ineffective assistance of trial counsel, filed in the Oklahoma Court of Criminal Appeals on April 15, 2011.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal habeas corpus relief is proper only when the state court adjudication of a claim:

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Ground I**

Petitioner alleges in Ground I that his trial counsel was ineffective in failing to investigate and present evidence to support petitioner's insanity defense or to mitigate his sentence. On direct appeal, petitioner filed with his brief (Dkt. 5-1) an Application for Evidentiary Hearing on the issue of ineffective assistance of trial counsel regarding his prior mental health evaluations. (Dkt. 6-4). The Oklahoma Court of Criminal Appeals (OCCA) denied the application for evidentiary hearing and found no merit in petitioner's claim of ineffective assistance of counsel on this issue:

> [W]e found Appellant was not denied the effective assistance of counsel as he has failed to show either deficient performance or prejudice. *See Goode v. State*, 236 P.3d 671, 686 (Okla. Crim. App. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). *See also Harrington v. Richter*, 562 U.S. 86, 111-12 (2011). The record indicates counsel was aware of Appellant's mental health history. Counsel filed for a mental competency evaluation and the evaluation found Appellant competent to stand trial. Counsel also had Appellant evaluated by Dr. Russell, the mental health expert for the Oklahoma Indigent Defense System. However, the record indicates a report from Dr. Russell was never filed, the reasonable inference being the evaluation did not support Appellant's claim of insanity. Appellant has not shown that any failure on counsel's part to investigate further was not reasonable trial strategy. The available evidence showed Appellant suffered a mental illness, not insanity.
>
> Further, this was a bench trial. The judge was well aware of the evidence necessary to establish a defense of insanity and trial counsel surely knew the judge would not be swayed by mental health evidence which might appear to a layman relevant to insanity but which was not legally compelling.
>
> Appellant's Application for Evidentiary Hearing on Sixth Amendment Claims filed contemporaneously with his appellate brief is also DENIED. We

3

> find Appellant has failed to show by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to investigate further evidence of insanity and utilize such evidence at trial. *See* Rule 3.11(B)(3)(6), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2010). *See also Simpson v. State*, 230 P.3d 888, 905-06 (Okla. Crim. App. 2010); *Warner v. State*, 144 P.3d 838, 893 (Okla. Crim. App. 2006). Nothing in the extra-record material supplied by Appellant shows that he was diagnosed as not knowing that his acts were wrong or that he was unable to distinguish right from wrong with respect to assaulting his grandmother, or that his bipolar disorder was such that he did not understand the nature and consequences of his acts.

*Whelchel v. State*, No. F-2010-976, slip op. at 2-4 (Okla Crim. App. Oct. 4, 2011).

"There is a strong presumption that counsel provided effective assistance of counsel, and petitioner has the burden of proof to overcome that presumption." *United States v. Rantz*, 862 F.2d 808, 810 (10th Cir. 1988) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)), *cert. denied*, 489 U.S. 1089 (1989). To prevail on his claim of ineffective assistance of counsel, petitioner must show that (1) his counsel's performance fell below an objective standard of reasonableness, *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694.

> To prove that his counsel's performance was deficient, [petitioner] must show that his counsel "committed serious errors in light of prevailing professional norms such that his legal representation fell below an objective standard of reasonableness." *Duvall v. Reynolds*, 139 F.3d 768, 776-77 (10th Cir.) (internal quotations omitted), *cert. denied*, 525 U.S. 933 (1998). [Petitioner] "must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance that might be considered sound trial strategy." *Moore v. Reynolds*, 153 F.3d 1086, 1096 (10th Cir. 1998) (citing *Strickland*, 466 U.S. at 689, *cert. denied*, 526 U.S. 1025 (1999)). . . .

*Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999).

The Supreme Court has since expanded the application of *Strickland* in habeas corpus proceedings:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (emphasis in original).

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 778 (internal citations and quotation marks omitted).

Here, the court finds the OCCA clearly followed the requirements of *Strickland* in finding that trial counsel's performance was not deficient or prejudicial. The record shows that counsel did investigate and was aware of petitioner's extensive prior mental heath issues. Although counsel had filed a Notice of Plea of Not Guilty by Reason of Insanity (Dkt. 5-6), petitioner has presented no evidence that shows he met the legal requirements for an insanity defense.

5

As for the denial of petitioner's Rule 3.11 application for an evidentiary hearing on the issue, the OCCA found he had not shown by clear and convincing evidence that there was a "strong possibility" of trial counsel's ineffectiveness arising from alleged failure to investigate and use such evidence of insanity. *Whelchel*, slip op. at 3. The OCCA determined there was nothing in the motion or its extensive attachments demonstrating evidence that petitioner was insane or that his sentence should be modified. *Id*. at 3-4. Therefore, petitioner has failed to meet the requirements of *Strickland* regarding this claim.

This court, therefore, finds petitioner has failed to show the OCCA's adjudication of the claim was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). Furthermore the OCCA's determination was not based on an unreasonable determination of the facts presented in the State court proceeding. 28 U.S.C. § 2254(d)(2). Ground I of this habeas petition fails.

**Ground II**

Petitioner alleges in Ground II that the evidence was insufficient to support his conviction for First Degree Robbery. On direct appeal, the OCCA found that "reviewing the evidence in the light most favorable to [the State], any rational trier of fact could have found the essential elements of the crime of First Degree Robbery beyond a reasonable doubt." *Whelchel*, slip op. at 4 (citing *Easlick v. State*, 90 P.3d 556, 559 (Okla. Crim. App. 2004)).

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." *Case v. Mondagon*, 887 F. 2d 1388, 1392 (10th Cir. 1989), *cert. denied*, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

6

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court repeatedly has emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987), *cert. denied*, 498 U.S. 904 (1990)).

To determine whether there was sufficient evidence presented at trial to sustain petitioner's conviction, the court first must look to Oklahoma law for the elements required for the crime. *Jackson*, 443 U.S. at 324 n.16; *see also Torres v. Mullin*, 317 F.3d 1145, 1152 (10th Cir.), *cert. denied*, 540 U.S. 1035 (2003). In Oklahoma, Robbery is defined as "a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Okla. Stat. tit. 21, § 791 (2001).

> Robbery in the first degree is when, in the course of committing the theft, the defendant:

1. inflicts serious bodily injury upon the person;

2. threatens a person with immediate serious bodily injury;

3. intentionally puts a person in fear of immediate serious bodily injury; or

4. commits or threatens to commit a felony upon the person.

Okla. Stat. tit. 21, § 797.

The record shows that petitioner had a history of fetal alcohol syndrome, diagnoses of bipolar disorder and schizophrenia, and a history of being institutionalized. (Dkt. 5-1 at 11; Tr. I 32-33, 67-68). Since early childhood, he had lived with his grandmother Elaine who had been his legal guardian. (Tr. I 32-34). On April 27, 2009, petitioner and Elaine went to church and then to a restaurant for lunch with relatives. (Tr. I 35). They returned to Elaine's house, and later in the afternoon, petitioner asked Elaine to drive him back to town to look around, so she took him to the park and the old amphitheater. (Tr. I 36). As it was getting darker outside, he insisted that she drive to some ponds located on property that Elaine's family used to own. (Tr. I 36-37). Elaine said she did not want to drive there, because her family no longer owned the land, the roads were too rough for her car, and she was not certain of the location of the ponds. (Tr. I 38-39). Petitioner insisted that they go to the ponds, or he would beat her head. (Tr. I 39). She became afraid and turned where he told her to go. (Tr. I 39).

They arrived at the old family land between 11:00 and 11:30 p.m., and Elaine stopped the car. (Tr. I 39-40). Petitioner looked at her and said he thought she would have already died naturally by then, but because that had not happened, he would take nature into his own hands and kill her. (Tr. I 40). He asked her whether she would rather be beaten in the head, choked, or have her neck broken . (Tr. I 40). Elaine said she did not want to choose and

8

asked if she could first pray. (Tr. I 40-40). Daniel agreed that because Elaine was "such a good, fine Christian woman," she could pray to God to see if He would help. (Tr. I 41). After failed attempts to choke or break Elaine's neck, petitioner began beating and kicking her in her head and face. (Tr. I 42-43, 46-47, 71-72). Elaine called petitioner by his name to try to stop him, but he only became angrier. (Tr. I 43). He told her not to call him "Daniel," because that was not his name. (Tr. I 43).

In describing petitioner's behavior, Elaine said, "[H]e was not Daniel that night. He was somebody else." (Tr. I 69). She stated that sometimes he was "a kind, loving, normal grandson," but "other times he can be just a completely different person that I don't know who he is or what he is." (Tr. I 69). She further testified she previously had seen him in what she called a "bipolar or schizophrenic attack," such as what she experienced the night of the attack. (Tr. I 68). She said it was clear to her that petitioner was hearing voices commanding him to do things as he assaulted her. (Tr. I 69). Petitioner was very angry at Elaine for her refusal to acknowledge all of his wives and the grandchildren he had given her, and he also rambled incoherently about other fantasies. (Tr. I 44-45). Petitioner never had been married and had no children. (Tr. I 45).

Elaine pleaded with petitioner to stop and just leave her there, because she probably would bleed to death anyway. (Tr. I 48). Petitioner responded by asking her whether she thought someone possibly would find and save her, and she said she believed it was possible. (Tr. I 48-49). Petitioner then said, "Well, if you think you'll probably bleed to death or if somebody might find you before you bleed to death then I think I'll just go on then." (Tr 48-49). He then drove off in Elaine's car and left her by the pond. (Tr. I 49). She never gave him permission to drive the car, but asked him to leave to prevent further beatings. (Tr. I 48-

9

49).

Elaine crawled toward a light in the distance and eventually got to her sister's house. (Tr. I 10-11, 50-51). The sister took Elaine to the hospital where she stayed for approximately two weeks, with non-life-threatening injuries. (Tr. I 56, 76).

After careful review, the court finds the evidence was sufficient to find petitioner guilty of First Degree Robbery under the standard of *Jackson v. Virginia*. Therefore, the OCCA's determination of this claim was consistent with federal law, pursuant to 28 U.S.C. § 2254(d). Ground II of this petition is meritless.

**Ground III and Ground IV**

Petitioner claims in Ground III that the prosecution overcharged him with First Degree Robbery, when a more specific charge of Malicious Mischief or Unauthorized Use of a Vehicle would have been more appropriate for his conduct. The OCCA denied the claim as follows:

> [W]e find the State did not abuse its discretion in charging Appellant with First Degree Robbery. The decision regarding which criminal charge to bring lies within the wide parameters of prosecutorial discretion. *Cuesta-Rodriguez v. State*, 241 P.3d 214, 235 (Okla. Crim. App. 2010); *Funkhouser v. State*, 763 P.2d 695, 697 (Okla. Crim. App. 1988); *Wolfenbarger v. State*, 710 P.2d 114, 115 (Okla. Crim. App. 1985). *See also Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (holding that as long as prosecutor has probable cause to believe that accused committed an offense defined by statute, decision whether or not to prosecute, and what charge to file "generally rests entirely in his discretion"). Based upon Appellant's use of force to deprive his grandmother of her car, First Degree Robbery is the more appropriate offense with which to charge Appellant and not Malicious Mischief under Okla. Stat. tit. 21, § 1787 or Unauthorized Use of a Motor Vehicle under Okla. Stat. tit. 47, § 4-102.
>
> Additionally, counsel's failure to raise this issue before the trial court does not satisfy the requirements of *Strickland* because any such objection would have been properly overruled. *Bland v. State*, 4 P.3d 702, 731 (Okla.

10

Crim. App. 2000).

*Whelchel*, No. F-2010-976, slip op. at 4-5 (footnotes omitted).

In Ground IV petitioner claims he was punished multiple times for the same crime, in violation of his statutory right against double punishment. The OCCA rejected the claim on the merits:

> [W]e find Appellant's convictions for Assault with Intent to Kill and First Degree Robbery do not violate the prohibition in Okla. Stat. tit. 21, § 11A against double punishment. *See Head v. State*, 146 P.3d 1141, 1145 (Okla. Crim. App. 2006) (citing *Davis v. State*, 993 P.2d 124, 126 (Okla. Crim. App. 1999)). Assault with Intent to Kill (Okla. Stat. tit. 21, § 652(C)) and First Degree Robbery (Okla. Stat. tit. 21, § 797), are clearly separate and distinct crimes. Appellant committed an assault with intent to kill when he physically assaulted his grandmother with the intent to take her life. He committed first degree robbery by forcibly taking her car without her permission. Two separate acts and two separate crimes were clearly committed. Punishment for both does not result in double punishment.

*Whelchel*, No. F-2010-976, slip op. at 5.

The respondent alleges Ground III and Ground IV concern matters of state law that are not cognizable in this federal habeas action. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1995) (per curium)). "Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that he is entitled to relief." *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (citing *Teague v. Looney*, 268 F.2d 506 (10th Cir. 1959)). Here, the court finds petitioner has failed to present an argument supporting federal habeas relief for Ground III or Ground IV.

11

**Ground V**

In Ground V petitioner complains that his two concurrent sentences of 22 years and 20 years' imprisonment are excessive. He claims his long history of mental illness requires shorter sentences with an emphasis on treatment instead of punishment. The OCCA found no error in petitioner's sentences:

> [W]e find Appellant's punishment was within the statutory limits and appropriate based on the evidence. *See Bartell v. State*, 881 P.2d 92, 101 (if a sentence is within the statutory guidelines, we will not disturb that sentence unless, under the facts and circumstances of the case, it is so excessive as to shock the conscience of the Court.) As in *Rea v. State*, 4 P.3d 148 (Okla. Crim. App. 2001), the trial court was provided with detailed information regarding Appellants's mental health history and fully considered all of the information regarding the crime and Appellant's personal circumstances prior to sentencing. We find no legal reason to modify Appellant's sentence.

*Whelchel*, No. F-2010-976, slip op. at 5-6.

The respondent asserts petitioner's claim that his sentences were excessive is not proper for federal habeas review.

> . . . We afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law. *See Haynes v. Butler*, 825 F.2d 921, 923–24 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988); *see also Handley v. Page*, 398 F.2d 351, 352 (10th Cir. 1968). Generally, our review of a sentence ends once we determine the sentence is within the limitation set by statute. *See Vasquez v. Cooper*, 862 F.2d 250, 255 (10th Cir. 1988).

*Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000), *cert. denied*, 534 U.S. 887 (2001). In this case, petitioner's sentences are within the statutory range of permissible punishment, so habeas relief cannot be granted.

**Ground VI**

Finally, petitioner claims his convictions should be reversed or his sentences modified,

because of cumulative error. The OCCA denied this claim, "as none of the allegations of error, considered singly and cumulatively warrant relief." *Whelchel*, No. F-2010, slip op. at 6 (citing *Lott v. State*, 98 P.3d 318, 357 (Okla. Crim. App. 2004)).

"Cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir.) (citing *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990), *cert. denied*, 522 U.S. 844 (1997)). *See also Castro v. Ward*, 138 F.3d 810, 832-33 (10th Cir.), *cert. denied*, 525 U.S. 971 (1998); *Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002), *cert. denied*, 540 U.S. 833 (2003) ("When reviewing a case for cumulative error, only actual errors are considered in determining whether the defendant's right to a fair trial was violated."). Ground VI of this petition also fails.

**ACCORDINGLY**, the Magistrate Judge recommends that this action be, in all respects, dismissed.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the parties are given fourteen (14) days from being served with a copy of this Report and Recommendation to file with the Clerk of the Court any objections with supporting briefs. Failure to file timely written objections to the Magistrate Judge's recommendations may result in waiver of appellate review of factual and legal questions. *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

**DATED** this 17th day of August 2015.

                                                **KIMBERLY E. WEST**
                                                **UNITED STATES MAGISTRATE JUDGE**